

EGA OPINION
YES ☐ NO ☑

SIGNATURE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES,

      Plaintiff,

v.

RICKY MARTIN,

      Defendant.

/

Case No. 04-CR-8001-DT

**FILED**

DEC 2 2 2006

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

### OPINION AND ORDER FINDING DEFENDANT IN CRIMINAL CONTEMPT AND IMPOSING A TERM OF IMPRISONMENT

On December 5, 2006, in the course of the court explaining its sentencing rationale, Defendant Ricky Martin interrupted and engaged in a series of insulting outbursts that delayed the proceedings and displayed gross disrespect for the court. Defendant Martin was found to be in direct criminal contempt of court, and summarily sentenced to an additional six-month consecutive sentence. Pursuant to Federal Rule of Criminal Procedure 42(b), the court certifies and records the reasons for this finding, as outlined below.

### I. BACKGROUND

Defendant was before the court for sentencing in connection with a supervised release violation. Early in the proceeding the probation officer was being questioned from the witness stand about the predicates of certain violation allegations the Defendant had not admitted. Defendant began to speak out, easily within the hearing of the court, opposing or challenging some of the things that were being said by the probation officer, and the court cautioned Defendant about verbally protesting in court:

> If you wish to speak, Mr. Martin, it needs to be at the lectern being questioned by me, just as you were a moment ago, or on the witness stand under oath having been called to the witness stand by your attorney. . . . But I don't want to hear from you in this hearing other than on the witness stand or standing at this lectern. Understood?

(Tr. at 26.) The court further cautioned, "from where you are seated right now I do not want to hear from you. I don't want to hear you volunteer things, yell things out, respond to the witness. If you want to say something to your attorney, reasonably quietly, you may do that." (*Id.*)

Later in the proceeding, after a determination to revoke supervised release had been made, and a sentence imposed, the government urged the court to explain its reasoning under Title 18 § 3553(a), and the court agreed since such an explanation would be generally consistent with developing Sixth Circuit law of sentencing in the wake of *United States v. Booker*, 543 U.S. 220 (2005). *See, e.g., U.S. v. Sloboda*, 162 F. App'x 550, 553 (6th Cir. 2006) ("The statements made by the judge at [a supervised release violation] sentencing demonstrate that he considered how some of the § 3553(a) factors applied to [the defendant] in determining her appropriate sentence.").

In the process of explaining, the court briefly addressed the Defendant directly and stated that based upon some of the violation conduct the court had found occurred (i.e., telling his probation officer that he was sleeping through his drug counseling session because he had been up all night having sex, and that he didn't think the court would mind), it seemed that Defendant had "little respect" for himself and "almost no respect for other people. . . . It's just, you're like a child. You're like a six-year-old child in a five-foot, ten-inch body . . . ." (Tr. at 68.)

2

Thereupon, Defendant erupted again, beginning by saying "I don't have to sit here and hear you talk to me like this, man." (*Id.*) Both the court and Defendant's attorney attempted to counsel him, and tell him to stop, but Defendant would not be quiet. He continued, loudly saying to his attorney "I ain't got nothing else to say to him. He ain't got nothing else to say to me. The man's sitting up there disrespecting me. He's not going to disrespect me, man. I'm not no bitch." (*Id.* at 69.)

At that point the court summarily found Defendant in contempt and announced an intended sentence. Defendant and his attorney were given an opportunity to respond, which the attorney did. After Defendant decided to continue his rant, however, the court confirmed the sentence. A transcript of the excerpts of the hearing will be made a part of this opinion as an attachment.

## II. STANDARD

The controlling statute provides, in part, that

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice

18 U.S.C. § 401.

"The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Ex Parte Terry*, 128 U.S. 289, 303 (1988) (citations omitted). The court's contempt power is made express by 18 U.S.C. § 401, which gives the court discretion to punish contempt. Moreover, Federal Rule of Criminal Procedure 42(b)

3

provides the court with power to act summarily when the contempt takes place in the

presence of the court. Rule 42(b) states in part: "Notwithstanding any other provision of

these rules, the court (other than a magistrate judge) may summarily punish a person

who commits criminal contempt in its presence if the judge saw or heard the

contemptuous conduct and so certifies."   That rule requires a contempt order, which

"must recite the facts, be signed by the judge, and be filed with the clerk."   The Sixth

Circuit has clarified the purpose of this requirement:

> Informed appellate review is possible only if the facts are stated in
> sufficient detail for the appellate court to determine whether the conduct
> upon which the conviction rests was contemptuous, factually and legally;
> whether it was of such character, and occurred in such circumstances, as
> to permit summary conviction under Rule 42(a), and because Rule 42
> sentences are subject to appellate review and revision, whether the
> conduct relied upon justified the sentence imposed.

> The order of contempt must recite the specific facts upon which the
> conviction is based. Conclusory language and general citations to the
> record are insufficient.

United States v. Mars, 551 F.2d 711, 715 (6th Cir. 1977) (internal quotations and

citations omitted).

The Sixth Circuit has identified four elements of criminal contempt under Rule

42(b).  See Vaughn v. City of Flint, 752 F.2d 1160, 1167 (6th Cir. 1985) (citing U.S. v.

Seale 461 F.2d 345, 366-67 (7th Cir. 1972)); In re Edward Witt Chandler, 906 F.2d 248,

249 (6th Cir. 1990).  First, "[t]here must be conduct which constitutes misbehavior."

Vaughn, 752 F.2d at 1167 (citations omitted).

Second, "the misbehavior must amount to an obstruction of the administration of

justice."  Id.  "This must be an actual, not a theoretical obstruction."  Id. at 1168 (citing In

re McConnell, 370 U.S. 230, 234 (1962)).  Disrespect for the court has long been

4

recognized as an obstruction to the administration of justice. *Cooke v. United States,* 267 U.S. 517, 535 (1925) ("To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance *or* violence *or* physical obstruction *or disrespect to the court* when occurring in open court.") (emphasis added).

Third, "the conduct must occur in the court's presence." *Vaughn,* 752 F.2d at 1167 (citations omitted); *see also Pounders v. Watson,* 521 U.S. 982, 988 (1997) ("Where misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication."); *Cooke,* 267 U.S. at 535 ("There is no evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary.").

Finally, "There must be some form of intent to obstruct." *Vaughn,* 752 F.2d at 1167 (citations omitted). To satisfy this last requirement, there needs to be, at a minimum, "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Id.* "In criminal contempt, willful disobedience must be proved beyond a reasonable doubt. Willfulness, for this purpose, implies a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation." *TWM Mfg. Co. v. Dura Corp.,* 722 F.2d 1261, 1272 (6th Cir. 1983) (internal quotations and citations omitted).

The fundamental purpose of the court's contempt authority is to preserve respect for the judicial system itself. *See Young v. United States ex rel. Vuitton Et Fils S.A.,* 481 U.S. 787 (1987). "A judge need not tolerate disrespect or a deliberate show of defiance in open court. To affront the dignity of the court the misbehavior need not insult the judge personally, but may consist of threats, disrespect or other like behavior." *United*

States v. Meacham, 65 F. App'x 529, 533 (6th Cir. 2003) (quoting United States v. Giovanelli, 897 F.2d 1227, 1232 (2nd Cir. 1990)); see also Illinois v. Allen, 397 U.S. 337, 343 (1970) ("We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.").

Criminal contempt is the appropriate sanction to "punish the contemnor, vindicate the court's authority, or deter future misconduct." United States v. Lippitt, 180 F.3d 873, 876-77 (7th Cir. 1999). Summary disposition under Rule 42(b) was intended for situations "where instant action is necessary to protect the judicial institution itself." Harris v. United States, 382 U.S. 162, 167 (1965); see also Cooke, 267 U.S. at 535 ("To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court.").

The Sixth Circuit in Vaughn relied upon on the teachings of the 7th Circuit in Seale, which in turn cited In re McConnell for the "clear requirement" of obstruction to the administration of justice: "The statute secondly requires the misbehavior to rise to the level of an 'obstruct[ion of] the administration of justice.' . . . [I]ts presence is clearly required in order that misbehavior be punishable as contempt." Seale, 461 F.2d at 366-67 (citing In re McConnell, 370 U.S. at 234).

In McConnell, Justice Harlan, dissenting, sought to limit the impact of the Court's opinion which, he said, if interpreted too broadly, could indicate that "only a physical obstruction of pending judicial proceedings is punishable under 18 U.S.C. § 401." In re McConnell, 370 U.S. at 236. Justice Harlan correctly noted that "a court's power to

6

punish summarily for contempt has always been available as a sanction against the use of abusive and insulting language in a courtroom." *Id.* (citing *Offutt v. United States,* 348 U.S. 11 (1954); *Fisher v. Pace,* 336 U.S. 155, 159-60 (1949); *Ex parte Terry,* 128 U.S. at 307-09). Indeed, no subsequent decision known to the court from the Supreme Court, the Sixth Circuit or anywhere else has equated "actual obstruction," *Vaughn,* 752 F.2d at 1168, with physical obstruction.

### III. DISCUSSION

#### A. The predicates of contempt

##### 1. Misbehavior

In order for the court to properly find a contempt, "[t]here must be conduct which constitutes misbehavior." *Vaughn,* 752 F.2d at 1167 (citations omitted). Here the contumacious behavior, the vulgar and disrespectful language used and the irrationally confrontational attitude displayed are without question "misbehavior" in court.

##### 2. Obstruction

Second, "the misbehavior must amount to an obstruction of the administration of justice." *Id.* "This must be an actual, not a theoretical obstruction." *Id.* at 1168 (citing *In re McConnell,* 370 U.S. at 234). Obstruction involves an "act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *United States v. Warlick,* 742 F.2d 113, 116 (4th Cir. 1984). Obstruction may be found when "the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary costs on the other parties." *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 532 (5th Cir. 1992). A court should consider whether the misconduct "had an effect on the proceedings." *Id.* (citing *United States v.*

7

*Oberhellmann,* 946 F.2d 50, 52 (7th Cir. 1991)).  Here, the misbehavior of Defendant was not only a gross and vulgar affront to the dignity of the court and the orderly administration of justice in a sentencing, it also was an interruption in those proceedings.  To demonstrate that such behavior is consequential to the administration of justice requires only to imagine that our appellate courts had decided that such behavior is the acceptable norm.  With sentencing proceedings regularly punctuated by interruptions and insults of this kind hurled at district judges, orderliness and respect would dissolve, the need for courtroom security would increase and the time required to conclude proceedings would certainly be multiplied.

Based on Defendant's direct challenges to this court on the record, it seems clear that Defendant believed that the court was offering unflattering statements about him for no good reason, and thereby insulting his character.  The court's comments were, indeed, very specific and doubtless they were greatly at odds with the Defendant's self-image.  It may be predictable that the post-*Booker* articulation of reasons required by the Sixth Circuit, when delivered within the hearing of volatile Defendants, will spur similar outbursts and nescient protests that the judge is "disrespecting" them, especially if the court's statements (as here) relate to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

This, though, is what sentencing judges are urged, even required, to do.  In *U.S. v. Morris,* 448 F.3d 929 (6th Cir. 2006), the sentencing judge addressed the defendant directly and said (among other things),

> You have to look at yourself and ask, Is that what I am?  Am I 23 and look like a full-time drug dealer? . . . Is that . . . how you make your living?  You're a drug dealer . . . . You are going to deny that. You are going to say casual use.  It didn't have much to do with anything. Nothing dissuades you.  You're arrested and

8

stopped by the police, that doesn't stop you. How do we stop you?

*Id.* at 932-33.

These statements were particularly held up as an example of an "excellent" sentencing statement by a concurring member of the *Morris* panel.[1]

That a Defendant is required by law to endure hearing unpleasant things about his "history and characteristics" cannot be transformed into an excuse for him to behave in an obstreperous manner in open court. If there is any behavior that constitutes contempt *per se*–that is, behavior that is obviously so far beyond the pale that even without substantial judicial time or resources being consumed in dealing with it, simply cannot be permitted to go unpunished–the court believes that this Defendant's crude, confrontational outbursts must qualify. *See U.S. v. Schiffer* 351 F.2d 91, 94 (6th Cir. 1965) (finding as contempt *per se* attorney's repeated insults of the trial judge "calculated to provoke and to bring undue pressure upon the Court in the making of various rulings during the course of the trial").

In addition, however, the court has certified on the record that the behavior of the Defendant in fact obstructed the court's administration by lengthening the proceedings and appeared to require the summoning of additional deputy marshals to the courtroom. (Tr. at 74.) Although more than usual contingent were accompanying the defendant because of his earlier violence, including the crime of which he was convicted in this

---

[1] That praise carries added significance in light of the contrast between it and observations made by the same judge of the Court of Appeals in cases where he has criticized less direct sentencing explanations. See, e.g., *U.S. v. Vonner* 452 F.3d 560, 564 (6th Cir. 2006) (finding insufficient the sentencing court's explanation that "this term is reasonable in light of the aforementioned, in light of the aforementioned factors and is a sentence, furthermore, that will afford adequate deterrent and provide just punishment").

court, the court observed deputy marshals nearby on other duty apparently drawn to this courtroom by the Defendant's language and tone of voice. Also, numerous other people waiting their turn for other business of the court were delayed, including a dozen or more young attorneys waiting patiently to be sworn in to practice in this district.

### 3. In the court's presence

Third, "the conduct must occur in the court's presence." *Vaughn*, 752 F.2d at 1167 (citations omitted); *Pounders,* 521 U.S. at 988; *Cooke* 267 U.S. at 535. Obviously, on-the-record behavior with comments directed at the judge occurs "in the court's presence."

### 4. Intent

Finally, "There must be some form of intent to obstruct." *Vaughn*, 752 F.2d at 1167. The Defendant's repeated contemptuous statements came after 1) a caution from the court early in the proceedings, 2) a further caution by the court at the beginning of the outbursts, and 3) repeated cautions by his own attorney, and attempts to advise him to "stop" that the Defendant immediately rejected. The Defendant knew exactly what he was doing, and acted intentionally.[2]

### B. Sentence

The details of a sentence for contempt are discretionary. See *U.S. v. Seavers* 472 F.2d 607, 611 (6th Cir. 1973) (citing Title 18 U.S.C. § 401) (affirming six-month sentence imposed on immunized witness who twice refused to testify upon advice of

---

[2] The court uses the word "acted" in the Thespian sense as well, as it seemed from his almost-swaggering demeanor and verbal phrasing that the Defendant was indeed *acting,* posturing himself as some kind of heroic figure, ready to take on the world. In truth, this behavior is only the most recent example of an anti-social, anti-authoritarian attitude that has repeatedly landed him in prison at a relatively young age.

10

counsel, noting that "[t]he length of the sentence rests in the sound discretion of the trial judge," and that "the record before us does not disclose an abuse of that discretion").

As the transcript herein reveals, this court's inclination to impose a sentence of six months was announced, but was essentially conditioned upon an opportunity, initially offered to Defendant's attorney, to comment or respond.  The court said, "Mr. Tholen, do you want the offer any comments about my intended contempt of court determination?"  (Tr. at 70.)  The court certifies here, although this was not stated at the hearing, that it had in mind a possible lessened sentence if there were some attempt made to purge the contempt.  Defendant's attorney attempted to persuade the court to not impose a six month consecutive sentence, citing the "pressures" under which the Defendant was suffering.  (*Id.*)

However, immediately after his attorney had finished, the Defendant utterly rebuffed both his attorney's conciliatory comments and any possibility of a lessening of the sentence: "I don't want no mercy. I'm going to take that six months, baby, and spit it back at him." (*Id.* at 71.)  When the court then tried to interject, the Defendant interrupted the court and went even further, saying, "I'm going to take that six months and walk with it.  Put it on my back, baby.  It's nothing.  I hit that walk for six months.  I hit them weights for six more months, baby.  *I'll take it and walk with it consecutive.*" (*Id.* (emphasis added)).

With that last observation, alone among all the foolish things said by this foolish young man, the court agrees.

11

## IV. CONCLUSION

IT IS DETERMINED that Defendant Ricky Martin is in criminal contempt of court for his conduct at the December 5, 2006 hearing.

IT IS ORDERED that Defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of six months consecutive to any other undischarged sentence of imprisonment. A separate Judgment and Commitment Order will issue.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 18, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 18, 2006, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

1

1  UNITED STATES OF AMERICA

2  IN THE UNITED STATES DISTRICT COURT

3  FOR THE EASTERN DISTRICT OF MICHIGAN

4  SOUTHERN DIVISION

5

6

7  UNITED STATES OF AMERICA,

8         Plaintiff,

9    -vs-                Case No. 04-80011

10 RICKY MARTIN,           **E X C E R P T S**

11        Defendant.

12 _____/

13

14 **BEFORE THE HONORABLE ROBERT H. CLELAND**
     United States District Judge
15    712 US Courthouse & Federal Building
     231 Lafayette Boulevard West
16       Detroit, Michigan 48226
     Tuesday, December 5, 2006
17

18 APPEARANCES:

19    JOHN FREEMAN, ESQ.

20       Appearing on behalf of the Plaintiff.

21    DAVID THOLEN, ESQ.

22       Appearing on behalf of the Defendant.

23

24

25 COURT REPORTER:  Mary F. Wisneski (CSR-0231) 313-963-9432

1          **THE COURT:**  Well, I'm speaking to Mr. Martin.  And I

2    thank you, Mr. Tholen.  I just want to add my point here.

3          If you wish to speak, Mr. Martin, it needs to be at

4    the lectern being questioned by me, just as you were just a

5    moment ago, or, on the witness stand under oath having been

6    called to the witness stand by your attorney.  All right.

7    Otherwise, if there's something that you need to convey, tell

8    your attorney, he'll tell me, perhaps, in his judgment.  But I

9    don't want to hear from you in this hearing other than on the

10    witness stand or standing at this lectern.  Understood?

11          **THE RESPONDENT:**  So I get a chance to stand at this

12    thing again before it's over?

13          **THE COURT:**  If I question you.  If I choose to question

14    you, if you want to admit something or respond to the charges,

15    yes, but from where you're seated right now I do not want to

16    hear from you.  I don't want to hear you to volunteer things,

17    yell things out, call out, respond to the witness.  If you

18    want to say something to your attorney reasonably quietly, you

19    may do that but the rest of it is not permitted.  And I'll have

20    a further caution if that's necessary in the event that that's

21    repeated.  Go ahead, Mr. Freeman.

22    **Q.**    Officer Burkey, have you had an opportunity to review

23    the, at least some of the reports, in connection with the

24    arrest on October 17th, 2006?

25          **MR. THOLEN:**  Eighteenth.

1       **THE COURT:**  Yes.  I will indeed do that, and I thank

2    you for that reminder.  It's not precisely clear, I think, at

3    this point in the Sixth Circuit that that is the law.  But

4    assuming that it is, and I think it's likely to be an

5    appropriate portion at some point of the consideration of

6    supervised release.

7        I do want to make it clear that I considered the

8    advisory guideline range as only advisory, and certainly turn

9    to that first.  And I note that the sentence is within that

10   guideline range.  It's about the mid-point of that range.

11   Also, it's the high point, however, in the statutory

12   availability of the Court.

13        Under Section 3553 factors the seriousness of the

14   series of offenses that have been committed here by the

15   defendant, as evidenced by the presentation of the probation

16   officer, is the principle salient factor here.

17        Possession of a firearm under the circumstances on

18   two occasions, two separate occasions, by the defendant, is an

19   extremely serious offense.  Dangerousness to the community is

20   implicated in this regard.  Persistence of behavior, persistence

21   of criminal behavior is implicated and a very substantial

22   sentence; frankly, one in excess of 24 months if such were

23   available, and it may be available in Judge Hood's case, by the

24   way.  And she may well be urged to consider a sentence greater

25   than 24 months, assuming that that is available, even if it's

1   not fully consecutive or even partially to this sentence.

2          But in that regard the defendant, frankly, deserves

3   just punishment for the flagrant, flagrant and persistent

4   violations of supervised release evidenced here, including his

5   comment to the probation officer when he was awakened from his

6   stupor at the drug counseling session and made such a lame

7   excuse, insulting, disrespectful is, it seems to me, Mr. Martin,

8   you have very little respect for yourself, very little, and

9   almost no respect for other people.  It's just, it's astounding

10  how consistently obstructive you've been.  It's just, you're

11  like a child.  You're like a six-year old child in a

12  five-foot-ten-inch body or however tall you happen to be.  You're

13  just, you act

14          **THE RESPONDENT:**  -- I don't have to sit here and hear

15  you talk to me like this, man.

16          **THE COURT:**  As a matter of fact, you do.

17          **THE RESPONDENT:**  You just sit here and disrespect me,

18  man.

19          **THE COURT:**  As a matter of fact you do, because the

20  Court of Appeals has said that I am required to state.

21          **THE RESPONDENT:**  -- Well, I'm saying, what you're

22  saying that all that right there is not needed, man.  If you're

23  not happy with yourself, then don't be happy with yourself.

24  Don't put me down.  I promise to be a better person than you

25  will one day.

1          Your sentence man, you can sentence me to what you

2    please and I will do your sentence and I will come out this

3    prison, your prison, the government prison, or whoever prison

4    one day and be back out here again, man. See what I'm saying.

5          Your allegations, their allegations, I ain't been

6    found guilty of nothing, man. You hear me? And I ain't make

7    that statement like that. He asked me why was I up, why was I

8    asleep. I said because I was up all night. He said, up all

9    night doing what. I said having sex. He said, do you think

10   the Court would object to that. I said how can the Court object

11   to something I was doing at home. No, they wouldn't object to

12   something I'm doing in my privacy. So how -- they wouldn't

13   object to you having sex with your wife, would they? What, you

14   want me to be gay? I ain't got to be gay, do I?

15          **MR. THOLEN:** Stop.

16          **THE RESPONDENT:** No, I'm not stopping. He's just

17   talking to me -- I'm no dog, man. I'm ready to -- I've been

18   sitting -- I'm ready to go. I ain't got nothing else to say

19   to him. He ain't got nothing else to say to me. The man's

20   sitting up here disrespecting me. He's not going to disrespect

21   me, man. I'm not no bitch.

22          **THE COURT:** I find the defendant in contempt of court

23   in the presence of the Court, and I intend to impose a

24   consecutive term of six months for this contemptuous outburst

25   against which I have warned the defendant.

1    **THE RESPONDENT:** No.

2    **THE COURT:** At the beginning of this process.

3    **THE RESPONDENT:** It's nothing.

4    **THE COURT:** Mr. Tholen, do you want to offer any

5    comments about my intended contempt-of-court determination?

6    You've been trying to quiet the defendant for the past two

7    minutes that he's been talking and I appreciate those efforts.

8    He apparently does not appreciate your efforts.

9    **MR. THOLEN:** Your Honor.

10   **THE COURT:** Do you want to further comment?

11   **MR. THOLEN:** I do, Judge. I understand the Court's

12   intent. I understand the Court's reaction to comments made by

13   Mr. Martin. I would ask the Court -- I think this Court could

14   take judicial notice that Mr. Martin has a fairly heavy legal

15   weight over his head, not -- it does not end when he leaves

16   this courtroom. He's not even, he's at best one third of the

17   way down a path that he has to take, because he goes in front

18   of Judge Hood and he faces an uncertain future in front of

19   whomever the judge will be on the new federal firearms charge.

20   I would ask this Court that it reflect or try to take

21   consideration, I guess, of the pressures that Mr. Martin might

22   be feeling and understand that he may say things and he may

23   have done things in the past that are not things he would wish

24   to repeat if he could do so. And I would ask that this Court

25   not impose the consecutive six-month sentence.

1      **THE RESPONDENT:** I don't want no mercy. I'm going to
2   take that six months, baby, and spit it back at him.
3          **THE COURT:** You know.
4          **THE RESPONDENT:** -- I'm going to take that six months
5   and walk with it. Put it on my back, baby. It's nothing. I
6   hit that walk for six months. I hit them weights for six more
7   months, baby. I'll take it and walk with it consecutive.
8          **THE COURT:** You know.
9          **THE RESPONDENT:** I don't want no mercy from you, man,
10  not the way you just sat here and talked to myself. You don't
11  know what my life's like. You ain't lived like me. You can't
12  just sit here and dog me because of what I've been through in
13  the past. You ain't walked in my shoes.
14         **THE COURT:** Mr. Tholen, do you want to talk with the
15  defendant?
16         **MR. THOLEN:** I would ask --
17         **THE COURT:** Do you want to talk to the defendant?
18         **THE RESPONDENT:** I'm not talking to nobody. I'm
19  ready to go. If you're done sentencing me, man, then let me go.
20         **THE COURT:** Do you want to talk to him about the
21  possibility of additional, independently determined and
22  independently based contempt citations with additional
23  consecutive terms?
24         **MR. THOLEN:** I would like to conclude these
25  proceedings.

1         **THE COURT:** I'm sure you would. Do you want to

2    consult with your client?

3         **MR. THOLEN:** I do, Judge.

4         **THE COURT:** All right.

5         **THE RESPONDENT:** I'm good, man. We ain't got nothing

6    to talk about and I ain't got no respect for him. Other than

7    that, I'm ready to go.

8         **MR. THOLEN:** The last remarks notwithstanding, Your

9    Honor, I would still the ask Court to consider the situation

10    that Mr. Martin's in. He has a lot ahead of him on his plate.

11    And I would ask the Court to take that into consideration and,

12    perhaps, reconsider the suggested six months.

13         **THE COURT:** Mr. Tholen, you speak well on behalf of

14    your client. And you have provided service to him that he does

15    not, I think, fully comprehend the way in which you've advanced

16    his cause and tried to argue on his behalf. He is a

17    fundamentally disrespectful, obstreperous individual by his

18    behavior.

19         **THE RESPONDENT:** And what are you?

20         **THE COURT:** Mr. Martin, one more word of that nature

21    and you're going to be held in contempt of court again and

22    you're going to get an additional consecutive sentence. Do you

23    want to keep talking? I think not. There's been a pause here

24    and he's silent.

25         I believe that Mr. Martin, and I won't address this

1    directly to him and perhaps that won't set him off.  I believe

2    that Mr. Martin is a fundamentally obstreperous and

3    disrespectful person who has very little regard for himself

4    and, accordingly, shows very little regard for others and

5    especially those in positions of authority.

6          I think that that's led to bad and a desire to

7    continue what is fundamentally an easier way of life that,

8    involved in criminality, has led to his problems and brought

9    him before the Court, before Judge Hood's Court, before mine,

10   and then before some other judge, and maybe will be randomly

11   selected for the newly indicted offense.

12         In my view Mr. Martin will be better served by

13   finding ways to manage his anger, his drug use and his criminal

14   propensities.  He's only 23, maybe 24 years old.  He's got

15   potentially a long life in front of him.  I think that's right.

16   Born in '83, is that right?

17         **MR. THOLEN:**  Yes, Your Honor.

18         **THE COURT:**  Okay.  Twenty-three or 24 years of age.

19   He's got a long life ahead of him.  Some possibility, I suppose,

20   of making a success out of it but it's going to be an uphill

21   battle.

22         These comments are made in order to demonstrate under

23   Section 3553(a) the Court's choice for a sentence of 24 months

24   in order to attempt to afford adequate personal deterrence to

25   Mr. Martin for this kind of behavior, and in some measure, to

1     protect the public from further crimes of the defendant.

2            Those are the salient terms under the statute,

3     Section 3553(a), that I think are important in choosing the

4     sentence that I have chosen in this case.

5            Finally, the defendant's behavior here, as recorded,

6     the Court confirms, constitutes a gross contempt of court in

7     the presence of the Court which, because of the consumption of

8     time and the fifteen other people waiting for the next

9     proceeding here, has, in fact, obstructed the Court's exercise

10    of its responsibilities.

11           I note the presence of one, two, three, four, five,

12    Deputy Marshals or court security officers accompanying the

13    defendant.  His behavior, there may be more.  Do I count

14    correctly?

15           **MR. FREEMAN:**  Judge, there's more just outside your

16    field of view, I think, in the doorway.

17           **THE COURT:**  Perhaps.  This unusual expenditure of

18    Court and staff and marshal service resources is due to the

19    defendant's demonstrated behavior.

20           The delay occasioned by his contemptuous outburst

21    has further obstructed the Court's discharge of its

22    responsibilities this afternoon and stands as, what I believe

23    to be a clear example of contempt of court, justifying what I

24    believe to be under the circumstances a moderate sentence of

25    imprisonment which I confirm shall be six months consecutive in